IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

LUZ M. CERQUERA, )
 )
    Plaintiff, )
 )
v. ) Civil Action No. 01:09-cv-829
 )
SUPERVALUE, INC., et. al. )
 )
    Defendants. )
 )

MEMORANDUM OPINION

This matter comes before the Court on Defendants' Motion for Summary Judgment.

On May 8, 2009, Plaintiff filed a Complaint in the Circuit Court for the County of Fairfax. The Complaint asserts, among other things, that on or about November 14, 2005, by reason of Defendants' negligence, Plaintiff was caused to be injured when she slipped and fell in one of the aisles of a Shoppers Food & Pharmacy ("SFW") store located on Little River Turnpike in Fairfax County, Virginia. On July 16, 2009, Defendants filed an Answer to the Complaint in the Circuit Court for the County of Fairfax and on July 25, 2009, Defendants timely removed the lawsuit to this Court.

Plaintiff entered into the SFW store for purposes of shopping. She was accompanied by her husband, Joel Soto-

Rodriguez. She and her husband were at the store to buy sugar, and look at other things. Upon entering the store, they went immediately to the sugar aisle. She and her husband walked side by side up the sugar aisle until Plaintiff stopped at the place on the aisle where the sugar was located. At that point, she and her husband separated. Plaintiff does not recall whether she entered the aisle from the front of the store or the back, and does not know how long she was in the aisle prior to her fall.

Plaintiff stopped at the sugar area, picked up a bag and turned around to show her husband. As she was turning around she fell. As she was falling, she let go of the bag of sugar she was holding and it landed somewhere, but she does not know where. She is unsure of what caused her fall. There was sugar or flour on the floor and a piece of stick "like a sugar or a candy stick." Plaintiff does not know if she stepped on the stick.

Prior to her fall, Plaintiff never saw anything on the floor. She also did not feel anything under her feet as she was walking in the aisle. Plaintiff does not remember whether she saw anything on the floor after she fell. At times, Plaintiff has claimed that she actually saw a white substance on the floor after her fall, and at other times she has testified that she was only told that there was a white substance. Of the three potential items on the floor either seen by Plaintiff or told to her by some other person, Plaintiff does not know which, if any,

caused her to fall.

In addition, Plaintiff does not know, and is unable to give an estimate, how much area the substance, which looked like flour or sugar, covered on the floor. Plaintiff also never felt the substance which was allegedly on the floor. Plaintiff does not know how the lollipop stick, or flour and/or sugar got on the floor. In terms of the location of her fall, Plaintiff believes it was in an area near the end of the sugar aisle closest to the back of the store, but she is not sure if she was completely out of the aisle when she fell.

After her fall, Oscar Zuniga, an employee of Defendants, assisted her to her feet along with the help of her husband. Mr. Zuniga then called a manager and got a chair in which Plaintiff could sit. Thereafter, Mr. Zuniga found a lollipop stick in the aisle where she had fallen and showed it to her and her husband.

Plaintiff's husband did not see his wife fall. He estimated that he and his wife were in the store seven to ten minutes from the time they walked in until the accident happened. According to Mr. Soto-Rodriguez, he and his wife entered the sugar aisle together. They entered from the end of the aisle that is closest to the front of the store and proceeded to walk towards the back. Near the back, Plaintiff stopped and obtained a bag of sugar. At that point, Mr. Soto-Rodriguez continued walking until he saw Mr. Zuniga looking at him. Mr. Zuniga yelled something to the effect

3

of "Your wife," and Mr. Soto-Rodriguez turned around and saw his wife on the floor. He estimated he was ten feet from her at that time.

Mr. Soto-Rodriguez recalled that there were other customers in the aisle when his wife fell, but the first employee to get to his wife was Mr. Zuniga. Thereafter, either Mr. Zuniga or a manager got a chair for his wife or had someone else get a chair, and the chair was placed outside the sugar aisle in the middle of the back aisle of the store. The chair was brought to the scene, and a female employee came to the area and gave the Plaintiff a pill. Mr. Soto-Rodriguez also began filling out a report. According to Mr. Soto-Rodriguez, while he was completing the report, Mr. Zuniga came from the aisle where the accident had occurred and brought him a lollipop stick. Mr. Soto-Rodriguez indicates that Mr. Zuniga gave him the stick and said, "Save this because you might need it."

Plaintiff never told her husband that she slipped on the lollipop stick, and Mr. Soto-Rodriguez never saw the lollipop stick on the floor when he had walked through the aisle. When Mr. Soto-Rodriguz walked through the aisle where the accident happened, he felt something like sugar grain under his feet, but it was not a lot, and it was not visible. Mr. Soto-Rodriguez does not have any idea how the lollipop stick that was shown to him by Mr. Zuniga got on to the floor prior to his wife's fall.

Neither Plaintiff, nor her husband, had any conversation with any of the employees they encountered on the date of the accident which suggested how the lollipop stick or sugar and/or flour got on to the floor of the store prior to Plaintiff's fall, or how long either had been there prior to her fall.

At the time of the accident, Mamon Hakawati was an employee of Defendants and was working as the customer service manager. Mr. Hakawati first learned of the fall when Mr. Zuniga brought it to his attention. Mr. Hakawati offered assistance to the Plaintiff and brought her a chair. He made sure the Plaintiff was okay and then took a statement from her husband. Mr. Hakawati recalled that he had been in the area of the fall fifteen to twenty minutes before it happened. He did not see anything on the floor at that time.

At the time of the accident, Mr. Zuniga was an employee of SFW and worked in the diary department of the store in question. According to Mr. Zuniga, he was assisting a customer with a question when he saw Plaintiff and her husband walking toward him. While talking to the customer he was helping, he saw Plaintiff fall. According to Mr. Zuniga, the fall occurred on the back aisle of the store near the dairy department. At the time, he was standing in that back aisle near the Plaintiff and her husband, and her husband was walking toward him from the direction of aisle 1. Prior to the fall, Mr. Zuniga had been

checking a juice cooler to see what needed to be restocked. The juice cooler was located near the end of aisles 6, 7, and 8. Mr. Zuniga was walking from that area when the customer stopped to ask the question, which he had just begun answering when he saw the Plaintiff fall.

After seeing the fall, Mr. Zuniga ran to the Plaintiff and asked if she was okay. The customer he had been speaking to also came and wanted to move Plaintiff, but Mr. Zuniga instructed him not to do so. Mr. Zuniga then walked quickly to the front of the store and obtained a chair from the cafeteria. As he was returning to the scene, he told an employee at the front to page a manager. By the time he got back to Plaintiff, the manager, Mr. Hakawati, was present, as was another employee. He believed the other employee was cleaning with paper towels. After returning with the chair, Mr. Zuniga went and got some ice for the Plaintiff. According to Mr. Zuniga, when he returned, Plaintiff's husband showed him the lollipop stick. Mr. Zuniga claims he actually saw the husband pick it up off the floor. Mr. Zuniga recalled that the lollipop stick had remnants of a red lollipop on it as well as what he believed was saliva. Mr. Zuniga also recalled that after the husband picked up the lollipop stick, he noticed what he described as the remnants of "sugar or caramel" from the lollipop on the ground. He described these remnants as red in color, not white granular sugar.

Mr. Zuniga estimated that the accident occurred between 6:30 p.m. and 7:00 p.m. It was his belief that the shift that evening had started at 5:00 p.m. Between the beginning of his shift and the accident, Mr. Hakawati believed that he probably would have been working on and off the sales floor loading milk and eggs in the dairy area, as well as working in the area of the juices. Prior to the fall, Mr. Zuniga claims he had no knowledge that a lollipop stick was on the floor and he never told the Plaintiff or her husband that he was aware of its presence. Mr. Zuniga also denied giving the Plaintiff and her husband any indication which would have suggested that he was aware of the lollipop stick prior to the fall. According to Mr. Zuniga, the lollipop stick was not on the floor while he was working. He first saw it after Plaintiff's husband picked it up and showed it to him.

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court must grant summary judgment if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In reviewing a motion for summary judgment, courts view the facts in a light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party then has the burden of showing that a genuine dispute as to any material fact does exist. Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 248. "Rule 56(e) requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

In an action in federal court where jurisdiction is based upon diversity of citizenship, the relevant state law controls. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Under Virginia law, the owner of premises is not an insurer of his invitee's safety. Rather, the owner must use ordinary care to render the premises reasonably safe for the invitee's visit. Holcombe v. NationsBanc Financial Services, 248 Va. 445, 447 (1994). "[I]n order to hold the owner of property liable for injuries sustained by an invitee due to the unsafe condition of the premises, it must be shown that the owner had knowledge of the alleged unsafe condition, or that it had existed for such a length of time as to make it the owner's duty in the exercise of ordinary care to have discovered it." Cannon v. Clarke, 209 Va.

708, 712 (1969)(citations omitted). In premises liability cases, the plaintiff must introduce evidence of the responsible person's actual or constructive knowledge of the defective condition on the premises in order to establish a prima facie case of negligence. Grim v. Rahe, Inc., 246 Va. 239, 242 (1933). Where there is no evidence of actual knowledge of a dangerous condition and the issue is one of constructive knowledge, if the evidence fails to show when a defect occurred on the premises, the plaintiff has not made out a prima facie case. Id. It is the responsibility of the Plaintiff who alleges negligence to show why and how the accident happened, and if that is left to conjecture, guess and random judgment, she cannot recover. Lawson v. John Doe, 239 Va. 477, 482 (1990) (quoting Weddle, Administratrix v. Draper, 204 Va. 319, 322 (1963).

While many factual discrepancies may exist between the recollections of the various knowledgeable persons as to the exact location of the fall and the description of exactly what was on the floor, there are no material facts in dispute on the issue of notice in this case. Plaintiff has not put forth any evidence that any employee or agent of SFW caused the lollipop stick or sugar and/or flour to be on the floor.

Plaintiff's negligence theory, as set forth in her Complaint, is that SFW allowed the lollipop stick and sugar and/or flour to remain on the floor and failed to warn her of

9

their presence. In order to make out a prima facie case of negligence, Plaintiff has to have some evidence that SFW was aware of the existence, prior to her fall, of the thing or things that allegedly caused her fall. If Plaintiff lacks evidence of this actual notice, Plaintiff may still make out a prima facie case of constructive notice by offering some evidence as to when the alleged dangerous condition was created on the floor prior to her fall so that a jury can consider whether, in that time period, SFW should have discovered and remedied the condition in the exercise of its duty of reasonable care. Without such evidence, the jury would be left to speculate as to whether SFW should have discovered the lollipop and sugar and/or flour in the exercise of reasonable care since it is just as likely that the objects were dropped on the floor moments prior to Plaintiff's fall as it is that they had been there for some unreasonably long period of time prior to the fall.

Plaintiff, her husband, and all the witnesses in this case have all testified that they had no knowledge of the existence of the items on the floor prior to the accident. Therefore there is no evidence in this case of actual notice. All have also admitted that they have no idea how the items came to be on the floor. Therefore there is also no evidence as to how long the condition existed prior to the fall. In fact, the only evidence on this critical fact is the testimony of Mr. Hakawati, who said

there was nothing on the floor approximately 15 to 20 minutes prior to the fall when he was performing an inspection. Therefore, Plaintiff lacks sufficient evidence to prove notice, an essential element of her claim.

Plaintiff attempts to argue that the overall "trashy" appearance of the SFW should have put Defendants on notice. However while Mr. Zuniga testified that he believed the store, at times, appeared trashy due to the actions of customers, he also admitted that he did not recall any customers complaining about trash on the floors in 2005. Plaintiff makes no elaboration about this alleged trash in the store. She offers no testimony of this general trash that was supposedly located in the store, whether it was there on the date of the accident, the type of trash that existed, how long such trash had been on the floor prior to Plaintiff's fall, and what, if anything, such general trash had to do with her fall. More importantly, Plaintiff herself testified that she did not notice anything on the floor prior to her fall.

Plaintiff is clear in her discovery deposition that she does not know why she fell. Plaintiff never saw anything on the floor prior to her fall and never felt anything under her feet as she was walking in the aisle. She has no idea whether she stepped on the lollipop stick and no one saw her step on it. Plaintiff's husband and Mr. Zuniga both claim that the other found the stick,

but neither can say whether it had anything to do with Plaintiff's fall since neither actually witnessed Plaintiff step on it. Plaintiff admits that she does not know if she stepped on it, but she also admits that does not remember feeling anything under her feet before she fell. Plaintiff speculates in her deposition that the lollipop stick and sugar and/or flour, or some combination of the three, must have been the cause of her fall, but speculation is not evidence. Furthermore, Plaintiff admits to having a bag of sugar in her hands when she started to fall and that she dropped it as she went to the ground. She testified to not knowing what happened to it after she fell. Therefore, it is just as likely that any white substance Plaintiff may or may not have seen after her fall was spillage from this thrown bag as it is that there existed sugar and/or flour on the floor prior to her fall. Although Mr. Soto-Rodriguez testified to feeling grains of something under his feet as he walked in the sugar aisle, he admitted it was not a lot, and Plaintiff did not remember feeling anything under her feet. It is speculation to assume Plaintiff walked over the exact same area as her husband.

In order to make out a prima facie case of negligence against a premises liability owner or operator, the first element a Plaintiff must prove is that a dangerous or defective condition actually existed on the premises which proximately caused the

accident or injuries. In this case, Plaintiff fails to do so. As a result, a jury would be left to speculate as to exactly what caused Plaintiff's fall. In addition, it is a plaintiff's burden to show how and why her accident happened. Plaintiff's allegations about what caused her fall are based on speculation. She testified under oath that she does not know what caused her to fall. Therefore, Plaintiff has also failed to satisfy this burden.

For the reasons stated above, Defendants' Motion for Summary Judgment should be GRANTED. An appropriate Order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
May 25, 2010

13